**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TYRONE LAVELLE RHODES JR., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24-cv-2632 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### MEMORANDUM OPINION AND ORDER

Tyrone Rhodes Jr., a *pro se* litigant, filed a complaint against the City of Chicago and several police officers, alleging various constitutional violations. A series of amended complaints soon followed. Rhodes filed an amended complaint, and a second amended complaint, and a third amended complaint, and a fourth amended complaint. And so on.

The operative pleading is the ninth amended complaint. Defendants responded with a motion to dismiss. And now, Rhodes moves to amend his complaint for the tenth time. That motion is denied.

The case began in state court, and the City removed it to federal court. *See* Notice of Removal (Dckt. No. 1). Since then, the parties have gone round and round with amended complaints. There are so many amended complaints and motions to dismiss that the docket, frankly, is hard to follow.

When the case arrived in federal court, Rhodes was already on his fourth amended complaint. *Id.* Before long, this Court granted Rhodes leave to file a fifth amended complaint to address a few problems. *See* 4/16/24 Order (Dckt. No. 14).

The fourth amended complaint was unclear, in both appearance and content. For starters, the handwritten complaint was hard to read, even for those who speak the language of bad handwriting.

This Court admonished Rhodes to use "clearer handwriting" to make the complaint "legible[] and easy to read." *Id.* The Court offered a few pointers, too. The Court reminded Rhodes to make factual allegations in separate paragraphs, and avoid conclusory allegations. *Id.*

Rhodes filed his fifth amended complaint in May 2024. *See* Fifth Am. Cplt. (Dckt. No. 25). The City moved to dismiss in July 2024. The Officer Defendants requested and received

more time to file an answer. *See* Mtn. to Dismiss (Dckt. No. 31); Mtn. for Extension of Time (Dckt. No. 32).

Rhodes responded to the motion to dismiss by seeking leave to amend the complaint yet again. *See* Mtn. to Amend (Dckt. No. 36). He submitted a draft of the proposed sixth amended complaint with the motion. *See* Sixth Am. Cplt. (Dckt. No. 37). This Court granted that motion in September 2024. *See* 9/3/24 Order (Dckt. No. 41).

The pattern continued. Defendants moved to dismiss the sixth amended complaint. *See* Mtn. to Dismiss (Dckt. No. 42); Mtn. to Dismiss (Dckt. No. 43). Rhodes responded with a motion for leave to file a seventh amended complaint. *See* Mtn. to Amend (Dckt. No. 46).

Rhodes attached a proposed draft of the seventh amended complaint. *See* Seventh Am. Cplt. (Dckt. No. 47). A few days later, Rhodes filed yet another motion for leave to amend, asking for permission to file an eighth amended complaint. *See* Mtn. to Amend (Dckt. No. 53).

This Court granted the motion for leave to file the eighth amended complaint, and denied the motions to dismiss as moot. *See* 10/18/24 Order (Dckt. No. 58). After so many rounds of complaints and motions, the docket had become a muddy track. As this Court noted at the time, the docket had seen a "flurry of filings." *Id.*

At that point, this Court was momentarily under the misimpression that the fifth amended complaint was the operative complaint. *Id.* In reality, the sixth amended complaint was the pleading in play. No matter. This Court granted leave to file an eighth amended complaint, so all prior pleadings fell by the wayside.

Before long, the City moved to dismiss, and the Officer Defendants requested more time to respond. *See* Mtn. to Dismiss (Dckt. No. 59); Mtn. for Extension of Time (Dckt. No. 60).

The motion to dismiss prompted Rhodes to file yet another motion for leave to file yet another amended complaint. He requested leave to file a ninth amended complaint. *See* Mtn. for Leave to Amend (Dckt. No. 61). He submitted a proposed draft of the ninth amended complaint, too. *See* Ninth Am. Cplt. (Dckt. No. 62).

This Court granted that motion, but "with great reservation." *See* 11/12/24 Order (Dckt. No. 66). This Court explained the reason for its reservation, too. "Every amended complaint adds costs, creates more work, consumes judicial resources, creates prejudice, and causes delay." *Id.*

This Court gave Rhodes one last chance, and forewarned that the ninth amended complaint would be his last. "The Court will allow the ninth amended complaint. But it's the last amended complaint. There will not be a tenth." *Id.* The Court also denied the then-pending motions to dismiss as moot. *Id.*

At that point, the ninth amended complaint became the operative complaint. The handwritten complaint includes 38 counts.

The reader probably won't fall out of his or her chair after hearing what happened next. The plot stayed the same, without twisting.

Once again, Defendants moved to dismiss. *See* Mtn. to Dismiss (Dckt. No. 80); Mtn. to Dismiss (Dckt. No. 82). And once again, Rhodes moved to amend his complaint. *See* Mtn. to Amend (Dckt. No. 86).

That motion is now before the Court. Rhodes seeks leave to amend his complaint for the tenth time.

Rule 15 provides that a court "should freely give leave [to amend] when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). "The Supreme Court has interpreted this rule to require a district court to allow amendment unless there is a good reason – futility, undue delay, undue prejudice, or bad faith – for denying leave to amend." *See Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 323, 357 (7th Cir. 2015); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

The standard under the Federal Rules is "justice." *See* Fed. R. Civ. P. 15(a)(2). The world's greatest thinkers have pondered the meaning of justice since time immemorial. Whatever it means, "justice" does not mean justice *for the plaintiff alone*.

The question is not simply whether amending the complaint would help the plaintiff. And the question is not whether a plaintiff is more likely to state a claim by amending the complaint. The Federal Rules take an even-handed approach, and consider both sides of the "v." A defendant's interests matter, too.

Rule 15 does not entitle a plaintiff to amend a complaint *ad infinitum*. Each amended complaint comes at a price, and the cost is paid by the opposing party. Every time a plaintiff amends a complaint, defense counsel has to read it, digest it, discuss it with the client, and figure out how best to respond. Defense counsel must put pen to paper, and fingers to keyboard.

That exercise creates costs, uncertainty, aggravation, and delay. Preparing a motion to dismiss is not a cost-free exercise. The churning docket leads to burning money.

Defendants shouldn't have to respond to a complaint multiple times. At some point, the merry-go-round has to stop spinning, the ground has to stop shifting, the target has to stop moving, and the goalposts have to stay put. Litigation shouldn't be skeet shooting, with the target constantly on the move.

Delay creates psychological burdens, too. Litigation is stressful for the parties, and it imposes a cost to have a case hanging over people's heads. A lawsuit consumes mental and emotional bandwidth, and the longer a case sticks around, the greater the toll on the parties. Kicking the can down the road means that finality is that much farther off in the distance.

Institutional interests also come into play. Prolonging a case doesn't do anyone any good. Few cases improve with the passage of time. Witnesses forget. Evidence is lost.

Fact-gathering becomes more difficult.  People lose interest.  Dockets gets clogged and bogged down.  And jurors wonder what took so long.

Amending a complaint again and again throws sand in the gears of smooth-running litigation.  That's why the Federal Rules give district courts wide-ranging discretion to declare that enough is enough.

And here, Rhodes has had enough chances.  In fact, in the last go-around, this Court made clear that the ninth amended complaint would be his last.  *See* 11/12/24 Order (Dckt. No. 66).  Rhodes filed the ninth amended complaint knowing that he was out of chances.

The motion at hand does not give much of a reason to change course.  Rhodes wants to add more facts and clarify his claims.  But he has already had that opportunity, multiple times.

Rhodes has filed an original complaint, plus nine amended complaints.  That's ten attempts to state a claim.  This Court called attention to deficiencies in the fourth amended complaint more than a year ago.  *See* 4/16/24 Order (Dckt. No. 14).  Defendants have responded with multiple rounds of motions to dismiss.  So Plaintiff was on notice of the deficiencies in the complaint, and had chances to fix them.

Meanwhile, the case has not moved forward in a year.  The case arrived in federal court in April 2024, meaning 15 months ago.  Since then, not much has happened, except multiple rounds of amended complaints and motions to dismiss.  The case is spinning in circles, going nowhere fast.

The complaint has already had nine lives.  That's enough chances.  The motion for leave to file a tenth amended complaint is denied.

Date:  July 7, 2025

Steven C. Seeger
United States District Judge

4